**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **LILLIE MIMS, *et al.*,** | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 13-00643-KD-M** |
| | ) | |
| **MONROE COUNTY BOARD OF** | ) | |
| **EDUCATION, *et al.*,** | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment as to

Plaintiff Mims (Docs. 27, 40), Mims' Response (Doc. 54) and Defendants' Reply (Doc. 56).

I.    <u>Findings of Fact</u>[1]

Plaintiff Lillie Mims (Mims), an African-American female, was employed in 2014 by the

Monroe County Board of Education (School Board) at J.F. Shields High School (Shields).

In 2011, Kathy Murphy (Murphy) became Superintendent, serving as the Chief Executive

Officer and Secretary of the School Board, overseeing the day-to-day operations of the school

system and making recommendations to the School Board concerning various matters including

personnel decisions.  (Docs. 32-2 (Aff. Murphy); 39-10).  According to Murphy, her goals and

plans for the school system included continuously planning for school and district-wide

improvement and to have well-prepared, capable and dedicated faculty and staff throughout the

district.  (<u>Id</u>.)  Two (2) schools were closed and many employees were shuffled to provide,

according to Murphy, a more effective educational experience for students.  (<u>Id</u>.)

---

[1] At the summary judgment stage, the facts are taken in the light most favorable to the non-movant. <u>Tipton v. Bergrohr GMBH–Siegen</u>, 965 F.2d 994, 998-999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." <u>Priester v. City of Riviera Beach</u>, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

On March 30, 2012, Murphy held a meeting with directors, some principals, assistant principals and various central office personnel, to discuss ideas for realigning personnel based on the needs of the school system and budgetary restraints.  (Id.)  Mims attended the meeting and was allowed to give input on the decisions that were to be made.  (Doc. 39-10).  As part of her plan, Murphy wished to improve the quality of education for the students assigned to the Monroe County C.P. Carmichael Alternative School (Alternative School) by providing meaningful instruction so when the students retuned to the regular classroom setting, they would be current on their class work.  (Docs. 32-2 (Aff. Murphy); 39-10).  Additionally, as of the date of  this meeting, the school system had nine (9) assistant principals but had only "earned" 4.5 principals; thus, one of the goals was to eliminate and shift assistant principals.  (Doc. 39-10).  Of the nine (9) assistant principals, four (4) were non-tenured and their contracts were not renewed.  (Id.)  Mims was tenured in one-half of an assistant principal's position (one-half of her duties were related to the position of assistant principal); she also served as a counselor.  (Id.)

In May 2012, Murphy informed Mims that she would recommend her transfer – from the position of assistant principal/counselor at Shields to assistant principal/counselor at the Alternative School – to the School Board.  (Doc. 39-10).  In response, Mims notified Murphy that she would be contesting the transfer.  Mims' attorney later made several requests to Murphy regarding the transfer, including a request for clarification of Mims' duties, responsibilities and job title.  (Doc. 35-5).  Murphy agreed with some of these requests and responded via letter to counsel on June 6, 2012, and Mims consented to the transfer.  (Doc. 35-6; Doc. 39-10).  Thereafter, on June 7, 2012 Murphy recommended Mims' transfer to the School Board, which voted and approved same.  (Doc. 35-7 at 3-4).  None of the individual members of the School Board believed or had reason to believe the transfer recommendation was based on race.  (Docs.

2

28-1 to 28-5 (Affs. Powell, Dean, Jordan, Black, Lett)).  With the transfer, Mims received no cut in pay or position.  (Doc. 39-10 at 4).

Murphy delineated the reasons Mims was transferred: 1) having an a counselor at the school would provide a much needed component at a school site that served students who were already having troubles, whether academic, personal or both; 2) Murphy received several community and parent requests that Mims not remain at Shields; and 3) Mims' transfer was based upon the needs of the school district as a whole and the specific needs at the Alternative School.  (Doc. 39-10).

Mims initiated this litigation on December 30, 2013, suing the School Board, Murphy, and individual members of the School Board,[2] alleging Title VII and Section 1981/1983 race discrimination (discriminatory transfer), retaliation, and hostile work environment.  (Doc. 18 at 1-2, 5-8).  Mims' Complaint alleges four (4) counts for: 1) First Cause of Action -- "Employment Discrimination: Title VII, Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq"; 2) Second Cause of Action -- "Employment Discrimination: Retaliation"; 3)  Third Cause of Action – "Equal Protection, 14th Amendment as enforced by Sections 1981"; and 4) Fourth Cause of Action -- "Equal Protection, 14th Amendment as enforced by Section 1983 Claim."  (Doc. 18 at 9-12).  Mims' allegations consist of the following:[3]

> ….Plaintiff avers that she has been the victim of unlawful employment discrimination, including, but not limited to, her transfer from J.F. Shields High school to C.P. Carmichael Alternative School…Plaintiff Mims was an assistant principal at J.F. Shields. Despite the representation that Plaintiff Mims was being transferred to the same position

---

[2] Suing Murphy in her individual capacity for Section 1981 and 1983 violations; and suing Tony Powell, Barbara Dean, Martha Jordan, Patricia M. Black and Richard R. Lett, members of the School Board, in their individual capacities for Section 1981 and 1983 violations.  (Doc. 18 at 3).

[3] While the Complaint suggests that Mims endeavors to "adopt and incorporate" all prior paragraphs and factual allegations (apparently including those of co-plaintiff Turner), she cannot assume Turner's specific paragraphs/allegations as her own because such "me too" evidence is not permissible in this case.  Moreover, the practice of "adopting and incorporating by reference" is disfavored in this Court.

of assistant principal and counselor, it is not true as her duties and responsibilities were different….she has been severely degraded in that the Alternative School is for students with disciplinary and behavioral transgressions who have been removed from their regular student body. At the Alternative School the plaintiff avers that she was relegated to the rank of a teacher, assigned teaching duties and responsibilities as opposed to administration. The principal assigned to the Alternative school is Larry Woolfolk and the plaintiffs are the designated teachers. Mims avers that the defendants MCBOE and its various members acted on the recommendation of the superintendent, whose actions were punitive, discriminatory and retaliatory against the plaintiffs. Unlike other assistant principals in Monroe County, plaintiff avers that she was not allowed to have a key to the school after her transfer to C.P. Carmichael Alternative School. Not having a key during the month of August, 2012, thus she had to rely on the schedule of the principal's secretary in determining when she could enter and leave the building. The Superintendent, defendant Dr. Murphy, directly questioned plaintiff Mims for not attending a couple of off campus meetings, even though she knew that the plaintiff could not leave the Alternative School building unlocked since she was the only one there at the time. This is just one example of how…the defendants have made it purposely more difficult for her [since] the filing of the original charge of discrimination.

On August 6, 2012, Plaintiff Mims alleges that Superintendent Murphy denied her the position of grant director for the 21st Century Community Learning Center. This happened even though Mr. Larry Turner, principal of J.F. Shields High School, recommended her retention as director for the grant, especially since the grant was originally written by the plaintiff….the adverse employment actions of Dr. Murphy and the Monroe County Board of Education in dismissing her as grant director for the 21st Century Community Learning Center are consistent with the pattern and practice of racial animus, discriminatory conduct and hostile work environment she has been subjected to. The Defendants have continued to make every effort to discredit and embarrass the plaintiffs amongst their peers, removing them from any position of actual responsibility and administrative duties relative to their placement at…Alternative School.

… even though on paper her job title is that of assistant principal and counselor, she has been demoted and relegated to simply a teacher of unruly students who have been removed from their student body for disciplinary reasons and placed in Alternative School. Her responsibilities have been severely degraded as she is compelled to accomplish job duties and responsibilities normally assigned to only teachers. These duties are thrust upon her as a direct and proximate cause of her having filed the charge of discrimination with the EEOC and are meant to punish and demean her and discredit her reputation in front of her peers. Plaintiff shows the court that on August 8, 2012, Amy McCrory, Director of Curriculum and Instruction, confronted her about a conference and informed her that she was required to come back to the afternoon session of a workshop. The plaintiff had already attended the morning session designed for administrators, but was told she had to go back to the afternoon session, (after she had left), even though[] that session was meant solely for teachers. Indeed, the plaintiff avers that she could not have attended the afternoon session because she was the only one at the Alternative

School at the time and would not have been able to have left without leaving the building unlocked. The Alternative School is a staffed by what can be best described as a skeletal personnel crew. Nonetheless, the plaintiff attended the morning workshop after seeing an email from Mrs. McCrory, specifically informing them that counselors would find the morning information helpful, and that they could slip out of the workshop after that session. Notably, Sandy Bell, a white counselor, was never questioned about her lack of attendance to the afternoon session. On another instance, specifically August 16, 2012, Dr. Murphy questioned the plaintiff about not attending the Renaissance Learning Training workshop on August 13-14, 2012. The plaintiff was the only assistant principal and/or counselor required to attend that workshop in the entire county. The workshop was designed for teachers using the Renaissance Learning program. Dr. Murphy confronted the plaintiff about her lack of attendance at the workshop even though she had signed the plaintiff's sick leave form for those days prior to the commencement of the workshop….

(Doc. 18 at 5-8).

## II.    Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (Dec. 2010).  Rule 56(c) provides as follows:

*(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

**(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

**(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

*(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

*(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

*(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be

admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c) (Dec. 2010).  The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment.  Celotex, 477 U.S. at 323.  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992) (internal citations and quotations omitted).

## III.   Conclusions of Law

At the outset, Mims has failed to provide specific citations to the evidence to support her claims, despite the Court's prior instructions.  (Doc. 49).  Instead, Mims cites evidence generally, without any specificity as to that upon which she relies (*e.g.*, "Murphy's Depo; Board Members deposition: Dean, p. ; Lett, p. Powell, p.[,]" "See her EEOC Exhibits, Affidavits and excerpts of Deposition testimony of how she was treated different…").  (Doc. 54 at 2, 11).  In this sense, Mims wholly fails to discuss (and show support for) how she was discriminated against.  Instead she simply points to a series of exhibits in general and then directs the Court to discover the

evidence for her. A party may not, by the simple dumping of a mass amount of evidentiary material into the record, shift to the Court the burden of identifying evidence supporting its position. The same holds true for Defendants who, while submitting 101 exhibits comprising approximately 1,270 pages (without delineation between Turner and Mims) (Docs. 28-39, 44), only cite to 18 exhibits for Mims. Accordingly, the Court's review is limited to those portions of the submitted materials to which the parties have expressly drawn the Court's attention with specific citation.[4] The Court has thus not considered those exhibits referenced generally (without any page or paragraph citation), as it is not the undersigned's task to use its resources to ferret out evidentiary support for the parties on summary judgment.[5]

A.   **Section 1981 claims: Third Cause of Action - "Equal Protection, 14th Amendment as enforced by Section[] 1981"[6]**

As alleged, defendants Murphy and the individual board members are state actors insofar as they are government officials "acting under color of [state] law." "Section 1981 does not provide a cause of action against state actors; instead, claims against state actors or [sic] allegations of § 1981 violations must be brought pursuant to § 1983." Baker v. Birmingham Bd. of Ed., 531 F.3d 1336, 1337 (11th Cir. 2008) (citing Butts v. County of Volusia, 222 F.3d 891,

---

[4] As illustration, for Mims this means that *her* evidence considered on summary judgment consists of two (2) paragraphs from her affidavit, a paragraph from Larry Turner's Affidavit, and approximately 30 combined pages from her own depositions and the depositions of individual board members Tony Powell, Barbara Dean and Patricia M. Black, and Superintendent Kathy Murphy.

[5] "There is no burden upon the…court to distill every potential argument that could be made based upon the materials before it on summary judgment." Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995). It is not the duty of the Court to scour the record to find specific references and places the parties *may* deem relevant. "Judges are not like pigs, hunting for truffles buried in briefs." United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991). See also e.g., Mathis v. Kerry, 2014 WL 793996, *1 (M.D. Ga. Feb. 27, 2014) (that "judges have no duty to scour the file in search of evidence is an obvious corollary to the requirement that parties specifically identify the portions of the…file which support their assertions regarding whether genuine issues remain for trial[]").

[6] While Mims references Section 1983 within this cause of action, such appears to be an error as this claim is raised under Section 1981 and mirrors the Section 1981 claim raised by Turner (Doc. 18 at 13).

892-894 (11th Cir. 2000)).  See, e.g., Cotton v. Polk Cty. Bd. of Cty. Com'rs, 2015 WL 1020634, *1 (M.D. Fla. Mar. 9, 2015); Betts v. Conecuh Cty. Bd. of Ed., 2014 WL 7411670, *5-7 (S.D. Ala. Dec. 30, 2014); Hamilton v. Montgomery Cty. Bd. of Ed., 122 F.Supp.2d 1273, 1279 (M.D. Ala. 2000).  As such, the Court merges Turner's Section 1981 count into her Section 1983 count, **DISMISSING** the "Third Federal Cause of Action" (Doc. 18 at 11) against these defendants, as a matter of law.  Jett v. Dallas Ind. Sch. Dist., 491 U.S. 701, 733 (1989) (Section 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor[]")); McMillan v. Fulton Cty., Ga., 352 Fed. Appx. 329, 330 at n. 1 (11th Cir. 2009) (there is no liability under section 1981 in cases involving state actors as such claims merge into the Section 1983 claims).

## B.  Section 1983 claims: Fourth Cause of Action – "Equal Protection, 14th Amendment" as enforced by Section 1983

In the Complaint Mims asserts Section 1983 claims for "Equal Protection, 14th Amendment" against Murphy and the board members in their individual capacities, for hostile work environment, retaliation, and race discrimination (discriminatory transfer).  (Doc. 18 at 12).

While inartfully pled, it appears that Turner alleges that these defendants violated her equal protection rights because she was transferred as part of a "custom and policy" on the part of  Murphy and the individual board members, of transferring African American employees to the Alternative School but not Caucasian employees.  (Id. at 12 at ¶26).

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

To establish a Section 1983 claim, Mims must show a violation of a right secured by the Constitution of the United States, and that the deprivation of that right was committed by a person acting under color of state law.   Cummings v. DeKalb Cty., 24 F.3d 1349 (11th Cir. 1994).   Section 1983 does not provide substantive rights, but merely "a method for vindicating federal rights elsewhere conferred." Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979).

### 1.   Hostile Work Environment[7]

Mims alleges Section 1983 hostile work environment against Murphy and the board members in their individual capacities, per the "Fourteenth Amendment" and "equal protection of the law."  (Doc. 18 at 1-2, 12).  Mims' claim is rooted in the following purported acts:

- She was transferred and demoted to the Alternative School and was thus "degraded" as she was relegated to teacher duties/responsibilities rather than administrative
- Unlike other assistant principals she was not allowed by the defendants to have a key to the school after her transfer which caused her to miss off campus meetings, "purposely" making it "more difficult for her"
- August 6, 2012, Murphy denied her the 21st Century Community Learning Center grant director position even though Shields principal Larry Turner recommended her
- defendants discredit and embarrass Mims among her peers, removing her from any position of actual responsibility and administrative duties
- August 8, 2012, Amy McCrory, Director of Curriculum and Instruction, confronted her about a conference and informed her that she was required to attend. However, Sandy Bell, a white counselor, was never questioned about her lack of attendance

---

[7] With regard to Mims' hostile work environment claim, this is not a class action and the Complaint does not allege "pattern and practice" for her allegations (despite Defendants briefing of this issue on summary judgment). EEOC v. Joe's Stonecrab, Inc., 220 F.3d 1263, 1286-1287 (11th Cir. 2000) (distinguishing pattern and practice claims from others, suggesting such claims may only be brought by the EEOC or a class of private plaintiffs).

Moreover, Mims cannot rely upon and/or base her hostile work environment claim on any evidence of the other co-plaintiff's experiences. See, e.g., Brown v. Berg Spiral Pipe Corp., 2011 WL 3610646, *14 (S.D. Ala. Aug. 17, 2011).  Support for Mims' discrimination case can only be based on evidence regarding *her* specific experiences or that which she became aware of while employed.  This is because "[t]o rely on the evidence, each [plaintiff] must show that he *was aware* of those incidents at the relevant time he alleges the hostile work environment."  See, e.g., Melton v. National Dairy, LLC, 705 F.Supp.2d 1303, 1342 (M.D. Ala. 2010) (citing Edwards Wallace Comm. College, 49 F.3d 1517, 1522 (11th Cir. 1995)) (emphasis in original). See also e.g., Head v. Pitts Enterp., Inc., 2010 WL 2773376, *8 (M.D. Ala. Jul. 14, 2010); McKenzie v. Citation Corp., LLC, 2007 WL 1424555, *13 (S.D. Ala. May 11, 2007).  Courts in the Eleventh Circuit may consider statements not directed at a plaintiff and even hearsay statements, *so long as the plaintiff was aware of the statements at the time he was employed.*  See, e.g., Yeomans v. Forster and Howell, Inc., 2010 WL 3716394, *5-6 (M.D. Ala. Sept. 10, 2010).

- August 16, 2012, Murphy questioned Mims about not attending the Renaissance Learning Training workshop on August 13-14, 2012, even though she had signed Mims' sick leave form for those days prior to the commencement of the workshop.

(Doc. 18 at 5-7).

Racial harassment is actionable where the conduct is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.  Freeman v. City of Riverdale, 330 Fed. Appx. 863, 865 (11th Cir. 2009).  To establish a prima facie case of hostile work environment and/or racial harassment, the plaintiff must prove that: 1) he belongs to a protected group; 2) he has been subject to unwelcome harassment; 3) the harassment was based on a protected characteristic of the employee (such as race); 4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and 5) the employer is responsible for such environment under a theory of vicarious or direct liability.  See, e.g., Reeves v. DSI Sec. Servs., Inc., 395 Fed. Appx. 544, 545–546 (11th Cir. 2010); McCann v. Tillman, 526 F .3d 1370, 1378 (11th Cir. 2008); Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002); Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999).  To be actionable as severe or pervasive, harassment "must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceive[s]...to be abusive."  Miller, 277 F.3d at 1276 (internal citation and quotation marks omitted).  In other words, the severe or pervasive element has an objective and subjective component.  McCann, 526 F.3d at 1378.  To determine objective severity, courts look at the totality of the circumstances and consider: 1) the frequency of the discriminatory conduct; 2) the severity of the conduct; 3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and 4) whether the conduct unreasonably interferes with an employee's job performance.  Reeves, 395 Fed. Appx. at 546.

See also Faragher v. City of Boca Raton, 524 U.S. 775, 787-788 (1998); Allen v. Tyson Foods, 121 F.3d 642, 647 (11th Cir. 1997) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). "The conduct is considered cumulatively instead of in isolation." Reeves, 395 Fed. Appx. at 546.

As to the first element, the parties do not dispute that Mims belongs to a protected group – African American. As to the second element, given Mims' allegations and viewing the factors in the light most favorable to her on summary judgment, the Court will assume Mims was subject to unwelcome harassment.

Regarding the third element, Mims must establish that the harassment by these defendants was based on a protected characteristic – her race. This she has failed to do. The only evidence in the record concerning this element consists of Mims' conclusory and unsupported statements, speculation and beliefs that Murphy was racist and/or acted with race in regards to Mims, and that the individual board members somehow "rubber stamped' this behavior by voting to transfer (demote) Mims to the Alternative School. See, e.g., Satchel v. School Bd. of Hillsborough Cty., 251 Fed. Appx. 626, 630 (11th Cir. 2007) (concluding the plaintiff failed to satisfy the third element when "the behavior she observed and experienced did not consist of any racially derogatory statements or acts" and merely evinced a belief that a coworkers was racist and the school system was affected by institutional racism).[8]

Specifically, Mims has submitted no evidence of discriminatory comments, racial epithets, veiled racial remarks, or any actions based on race by Murphy and/or the individual board members. Indeed, Mims has provided no evidence that any actions or treatment were based on her race, or that her treatment by Murphy had any racial component. Rather, Mims'

---

[8] An unsupported assertion does not create the requisite genuine issue of material fact to survive summary judgment. Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("This court has consistently held that conclusory allegations without specific supporting facts have no probative value.")

allegations are based on her own speculative assumptions.

Further, there is no evidence, of any sort, that any of the individual board members engaged in any racially motivated actions as to Mims.  Indeed, Mims has not shown that the individual board members' approval (described as a "rubber stamp") of her transfer was racially motivated or that race was a factor.  And that act – voting to approve the transfer – is the sum total allegation of discrimination leveled against the individual board members.

The same holds true to any claim by Mims that there existed a custom and policy of discrimination – there is no evidence of such by any of the defendants.  Only Mims unsupported conclusory allegation.

Thus, Mims has failed to establish that any of the alleged acts on the part of Murphy, and/or the individual board members, were based on race or even traceable to her race.  Moore v. Jimmy Dean/Sara Lee Foods, Inc., 520 F.Supp.2d 1359, 1363 (N.D. Ala. 2007).  "Without an evidentiary basis, finding harassment on the basis of…race is impossible since the Court has nothing to evaluate."  Aaron v. Board of Regents of Univ. Sys. of Ga., 58 F.Supp.3d 1368, 1382 (M.D. Ga. 2014) (citing Mendoza v. Borden, Inc., 195 F.3d 1238 (11th Cir.1999); see also Wheatfall v. Board of Regents University System of Georgia, 9 F.Supp.3d 1342 (N.D.Ga.2014) (Noting that in reviewing a hostile work environment claim 'without specifics ... a hypothetical reasonable person has nothing to evaluate.'). The Record before the Court is wholly inadequate to establish a claim for hostile work environment[]").[9]  In sum, when viewing the facts in the light most favorable to Mims, a reasonable jury could not find that the purportedly harassing

---

[9] See also e.g., Jones v. Mabus, 2013 WL 4662821, *5 (M.D. Ga. Aug. 29, 2013) ("While the record demonstrates ample evidence of impolite, rude, and insensitive behavior on the part of Jones, the evidence does not reflect that there were any racial…components to Jones's particular brand of "management." The facts reflect that Jones treated all employees in an intolerable manner, behavior that ultimately led to his discharge. Thus, aside from her unsupported assertion that she was discriminated against based on race…, Plaintiff has failed to present evidence showing that Jones's conduct constituted harassment motivated by her race…").

conduct was based on race.   Moreover, the conduct complained of was neither severe or pervasive.  Defendants' motion on this claim is **GRANTED.**

### 2. <u>Disparate Treatment: Discriminatory Transfer</u>

Mims alleges Section 1983 race discrimination (discriminatory transfer) against Murphy and the board members in their individual capacities, relying upon the "Fourteenth Amendment" and "equal protection of the law."   (Doc. 18 at 1-2, 12). Mims' equal protection race discrimination claim is that Murphy and the individual defendants discriminatorily transferred her from Shields to the Alternative School ("demoted" her) based on her race.  Mims alleges that she was not transferred to the same position (assistant principal/counselor) but was instead relegated to the rank of teacher and assigned teacher duties/responsibilities versus administrative, her duties and responsibilities were different, and she has been "severely degraded" as the Alternative School is for students with disciplinary and behavioral problems.  (Doc. 18).

Mims may support her claims with direct evidence, circumstantial evidence, or statistical proof.  <u>Rioux v. City of Atlanta, Ga.</u> 520 F.3d 1269, 1274 (11th Cir. 2008).[10]   There is no allegation or submission of direct evidence or statistical proof by Mims.  Thus, Mims' "proof of her claim of race discrimination is based on circumstantial evidence."  (Doc. 54 at 11).

---

[10] Direct evidence of discrimination is "evidence which reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee."  <u>Wilson v. B/E Aerospace, Inc.</u>, 376 F.3d 1079, 1086 (11th Cir. 2004).  Specifically, direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption. <u>Taylor v. Runyon</u>, 175 F.3d 861, 867 (11th Cir. 1999); <u>Jones v. Bessemer Carraway Med. Ctr.</u>, 151 F.3d 1321, 1323 n. 11 (11th Cir. 1998); <u>Burrell v. Board of Trustees of Ga. Military College</u>, 125 F.3d 1390, 1393 (11th Cir. 1997).  This means "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [race]." <u>Van Voorhis v. Hillsborough Cnty. Bd. of Cnty. Comm'rs,</u> 512 F.3d 1296, 1300 (11th Cir. 2008). <u>See</u> also <u>Ferrell v. Masland Carpets, Inc.</u>, 97 F. Supp.2d 1114, 1123 (S.D. Ala. 2000). Moreover, evidence that merely suggests a discriminatory motive is, by definition, circumstantial evidence.  <u>Burrell</u>, 125 F.3d at 1393-1394.   "[R]emarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination."  <u>Standard</u> 161 F.3d at 1330.  "To be direct evidence, the remark must indicate that the employment decision in question was motivated by race."  <u>Scott v. Suncoast Beverage Sales, Ltd.</u>, 295 F.3d 1223, 1227-1228 (11th Cir. 2002).

Where there is only circumstantial evidence, courts apply the framework in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>See</u>, <u>e.g.</u>, <u>Chapman v. AI Transp.</u>, 229 F.3d 1012, 1024 (11th Cir. 2000). Under <u>McDonnell Douglas</u>, the plaintiff has the initial burden of establishing a prima facie case of race discrimination. <u>Id</u>. To establish a prima facie case of discriminatory transfer, Mims must show she was: 1) a member of a protected class; 2) qualified for her current position; 3) subjected to a transfer constituting an adverse employment action; and 4) replaced by someone outside her protected class. <u>Hinson v. Clinch Cnty., Ga. Bd. of Ed.</u>, 231 F.3d 821, 828 (11th Cir. 2000). An "adverse employment action" requires "a serious and material change in the terms, conditions, or privileges of employment." <u>Webb–Edwards v. Orange Cnty. Sheriff's Office</u>, 525 F.3d 1013, 1031 (11th Cir. 2008) (internal quotation marks omitted). The relevant inquiry is whether the employment action is "materially adverse as viewed by a reasonable person in the circumstances," regardless of the "employee's subjective view of the significant adversity." <u>Id</u>. A transfer can be adverse if it involves a serious and material "reduction in pay, prestige, or responsibility." <u>Hinson</u>, 231 F.3d at 829.

Further, in <u>Sims v. MVM, Inc.</u>, 704 F.3d 1327, 1332-1333 (11th Cir. 2013), the Eleventh Circuit clarified that the <u>McDonnell Douglas</u> framework is not the *sine qua non* for a plaintiff to survive summary judgment. <u>See</u> <u>Smith,</u> 644 F.3d at 1328. "The plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." <u>Id</u>. A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a "convincing mosaic" of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker. <u>Id</u>. <u>See generally</u> <u>Hamilton v. Southland Christian School, Inc.</u>, 680 F.3d 1316, 1320 (11th Cir. 2012).

As to the first element, there is no dispute Mims is a member of a protected class, African

14

American.  Second, the Court assumes on summary judgment that Mims is qualified for her position (as Defendants have not asserted otherwise).  Nevertheless, even viewing the facts in the light most favorable to her, Mims has failed to show that the transfer constituted an adverse employment action and that she was replaced by someone outside her protected class.

Specifically, Mims was transferred from the position of Assistant Principal/Counselor at Shields to the position of Assistant Principal/Counselor at the Alternative School.  (Docs. 35-6; 35-8; 39-10).  Despite Mims' subjective claims, however, only her work site changed.  (Id.) Mims' pay remained the same.  (Id.)  Mims' position and title remained the same.  (Id.) Additionally, Mims consented to this transfer after reviewing (with counsel) her title, pay, position, duties and responsibilities at the Alternative School.  (Id.)  A purely lateral transfer is not an adverse employment action and thus, cannot support a prima facie case of discrimination. See, e.g., Doe. v. Dekalb Cty. Sch. Dist., 145 F.3d 1441, 1449-1451 (11th Cir. 1998).  See also e.g., Pegram v. Honeywell, Inc., 361 F.3d 272, 283-284 (5th Cir. 2004); Jones v. District of Columbia Dep't of Corr., 429 F.3d 276, 281 (D.C. Cir. 2005); Smith v. Alabama Dep't of Corr., 145 F.Supp.2d 1291, 1297-1298 (M.D. Ala. 2001).  Otherwise, "every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit[;]" "not everything that makes an employee unhappy is an actionable adverse action."  Doe, 145 F.3d at 1449. However, Mims' subjective preferences and speculative conclusions about her transfer do not transform a purely lateral transfer into an adverse employment action.  "[I]t seems significant that no panel of this [Eleventh] circuit has ever listed a plaintiff's particular subjective preference as a basis for its holding that a transfer was adverse." Doe, 145 F.3d at 1551.   Consequently, because an adverse employment action is an indispensable element of a discriminatory transfer claim, Turner's failure to present sufficient

15

evidence for a reasonable jury to find that this element is met is fatal to her claim.  See, e.g., Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1432 (11th Cir. 1998) ("Although a plaintiff's burden…is light, summary judgment against the plaintiff is appropriate if he fails to satisfy any one of the elements of a prima facie case[]").

Moreover, even if the Court were to assume an adverse employment action occurred, Mims has failed to even allege, much less establish with evidentiary support, that she was replaced by someone outside her protected class.

Further, there is no "convincing mosaic" of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker in these circumstances.

As Mims has failed to establish a prima facie case, the Court need not address Defendants' articulated legitimate, non-discriminatory reasons for the transfer, or the matters of pretext or qualified immunity.  As such, Defendants' motion as to this claim is **GRANTED.**

### 3.    Retaliation

Mims alleges Section 1983 retaliation against Murphy and the board members in their individual capacities, relying upon the "Fourteenth Amendment" and "equal protection of the law." (Doc. 18 at 12).  Section 1983 provides a cause of action for retaliation.  Bennett v. Hendrix, 423 F.3d 1247 (11th Cir. 2005).  *However*, a Section 1983 retaliation claim cannot be brought under the equal protection clause.  Watkins v. Bowden, 105 F.3d 1344, 1354-1355 (11th Cir. 1997) ("[a] pure or generic retaliation claim...simply does not implicate the Equal Protection Clause[]).  "The right to be free from retaliation is clearly established as a *first amendment* right and as a statutory right under Title VII; but no clearly established right exists under the *equal protection* clause to be free from retaliation."  Ratliff v. DeKalb Cty., Ga., 62 F.3d 338, 340 (11th Cir. 1995).  Mims' Complaint references the "Fourteenth Amendment" and "equal protection"

16

multiple times, alleging Section 1983 retaliation.   Thus, Mims' Fourth Cause of Action for

Section 1983 equal protection retaliation as to these defendants (Doc. 18 at 12) is **DISMISSED**

as a matter of law.  See, e.g., Betts v. Conecuh Cty. Bd. of Ed., 2014 WL 7411670, *7 (S.D. Ala.

Dec. 30, 2014) and Owens v. Jackson Cty. Bd. of Ed., 561 Fed. Appx. 846, 848 (11th Cir. 2014)

(addressing dismissals on similar grounds).

### C.  Title VII claims: First Cause of Action -- "Employment Discrimination:   Title VII, Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq" and Second Cause of Action -- "Employment Discrimination: Retaliation"

Mims alleges Title VII claims against the School Board.  (Doc. 18 at 3 at ¶6).  Mims

appears to allege Title VII claims for disparate treatment (discriminatory transfer or "demotion")

and retaliation.  (Doc. 18 at 1-2, 12).

### 1.      Disparate treatment - Discriminatory Transfer ("demotion")

In the First Cause of Action, Mims alleges that the racial discrimination by the School

Board "result[ed] in her demotion from positions of administrative duties and responsibilities."

(Doc. 18 at 3, 9 at ¶13).  When a Title VII disparate treatment claim is based on the same facts as

a Section 1981 or 1983 claim, "the analysis is the same under all theories of liability, and the

claims need not be analyzed separately." Lindsey v. Board of School Com'rs of Mobile Cty., 491

Fed. Appx. 8, 9 (11th Cir. 2012).  See also e.g., Richardson v. Leeds Police Dep't, 71 F.3d 801,

806 (11th Cir. 1995) (with "disparate treatment, in which § 1983 is employed as a remedy for the

same conduct attacked under Title VII, the elements of the two causes of action are the same…In

both instances, the plaintiff must prove that the defendant acted with discriminatory intent[]");

Abel v. Dubberly, 210 F.3d 1334, 1338 (11th Cir. 2000) (providing that courts analyze Title VII

and Section 1983 under the same standards);  Butts v. County of Volusia, 222 F.3d 891, 893–894

(11th Cir. 2000) (same). Thus, because Mims' Title VII discriminatory transfer claim is based on

the same facts as her Section 1983 discriminatory transfer claim, the same result detailed *supra* Section III.B.2 follows here, such that summary judgment is **GRANTED** on this claim.

    **2.**    **Retaliation**

In the Second Cause of Action, Mims alleges that the School Board retaliated against her for complaining about Murphy's actions as superintendent. This retaliation happened when they "rubber stamped, ratified, condoned and/or approved the discriminator[y] actions of the superintendent." (Doc. 18 at 3 at ¶6, 10 at ¶17; Doc. 54 at 13).

Mims has not offered any direct evidence of retaliation. When a plaintiff produces only circumstantial evidence, the Court applies the McDonnell-Douglas burden shifting framework, see *supra*. In that regard, to establish a prima facie case of retaliation, Mims must prove that: 1) she engaged in a statutorily protected activity; 2) she suffered an adverse employment action; and 3) a causal link exists between the two. See, e.g., Bryant v. Jones, 575 F.3d 1281, 1307-1308 (11th Cir. 2009). If Mims establishes her prima facie case, the burden of production shifts to the School Board to rebut the presumption by articulating a legitimate, nondiscriminatory reason for the adverse employment action. Perkins v. Kushla Water Dist., 21 F. Supp. 3d 1250, 1266 (S.D. Ala. 2014); Smith, 565 Fed. Appx. at 776–77 (11th Cir. 2014); Bryant v. Jones, 575 F.3d 1281, 1308 (11th Cir. 2009). If the School Board carries this burden, the burden shifts back to Mims to demonstrate that the School Board's proffered legitimate reasons for taking the adverse action were a pretext for retaliation and that her protected activity was the "but-for" cause of the adverse action. Mealing v. Georgia Dept. of Juvenile Justice, 564 Fed.Appx. 421, 427 (11th Cir. 2014). See also Perry v. Alabama Alcoholic Beverage Control Bd., 973 F.Supp.2d 1263, 1296 (M.D. Ala. 2013) ("the ultimate issue is whether the retaliation would not have occurred but for the protected conduct" and "[e]ven if any of the alleged discrete actions of

retaliation were sufficient to make out a prima facie case, they would not survive the 'but-for' test" based on the Supreme Court's clarification that the "level of causation" requires plaintiffs to show that the adverse employment action "would not have occurred but for the plaintiff's involvement with protected activity").

Mims filed an EEOC charge, which satisfies the first element of her prima facie case.[11] The Court turns to whether Mims has sufficiently shown that this protected activity resulted in an adverse employment action.[12]

Mims states that her transfer to the Alternative School was the retaliatory action. However, even if the Court were to assume that the transfer was a "demotion" and adverse employment action as Mims asserts, her retaliation claim rests on a factual impossibility.  Mims was transferred from Shields to the Alternative School on June 7, 2012.  (Doc. 35-7 at 3-4).  The Court notes that the EEOC Charges submitted with the motion to dismiss filings (Docs. 4-1 and 4-3) establish that she filed her initial EEOC Charge _after_ she was transferred. Mims filed an EEOC Charge on July 31, 2012 (received August 3, 2012), and another EEOC Charge on September 28, 2012 (received October 5, 2012).  (Docs. 4-1 and 4-3).  Thus, because Mims was transferred _before_ she filed any EEOC Charge (54 days or more than seven (7) weeks prior), it is a factual impossibility that the School Board could have transferred Mims in retaliation for filing

---

[11] An employee has engaged in protected activity if she has: 1) opposed an unlawful employment practice, or 2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII's retaliation provision.  Smith v. City of Fort Pierce, Fla., 565 Fed. Appx. 774, 776–777 (11th Cir. 2014) (quoting EEOC v. Total Sys. Servs., Inc., 221 F.3d 1171, 1174 (11th Cir. 2000) (quoting 42 U.S.C. § 2000e–3(a))). See Walton–Horton v. Hyundai of Ala,, 402 Fed. Appx. 405, 408 (11th Cir. 2010) ("Statutorily protected expression includes internal complaints of discrimination to superiors, complaints lodged with the Equal Employment Opportunity Commission, and discrimination-based lawsuits[]"); Tarmas v. Secretary of Navy, 433 Fed. Appx. 754, 762 (11th Cir. 2011) ("the filing of a claim with the EEOC is a 'statutorily protected activity[]'").

[12] An adverse employment action is judged by an objective standard, Foshee v. Ascension Health–IS, Inc., 384 Fed. Appx. 890, 892 (11th Cir. 2010), and is an act that would "dissuade a reasonable worker from making or supporting a charge of discrimination[]" Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 64 (2006). It is not limited to retaliatory actions that affect the terms and conditions of employment. Id. at 68.

an EEOC Charge as the Charge did not exist at the time of transfer.

Moreover, Mims provides no evidentiary support for her prima facie case and no specific record cites to any evidence submitted ostensibly in support.  Instead, Mims rests her claim on a few sweeping statements that are confusing and lack record citations.  For example, she asserts: "[s]he testified to the Superintendent's retaliatory actions after she filed her EEOC Charge." (Doc. 54 at 17).  Similarly, Mims summarily states: "Plaintiff Mims testified how she was treated different from other counselors, assiatant [sic] principals and white employees[.]"  (Doc. 54 at 17).  As stated *supra*, it is not the task of this Court to dig through the evidence submitted by Mims on summary judgment to find support for her claims. That task belonged to Mims.

At best then, Mims states her retaliation case (without any citation) as: "Superintendent Murphy had knowledge that they had field [sic] a charge of discrimination with the EEOC in July 2012 and September 2012, combined with the close temporal proximity of the chain of actions that followed thereafter, among them the hostile work environment while they were working at the alternative school, suggests causation." (Doc. 54 at 18).  Presumably, the claim is that because Mims filed EEOC complaints, she was subjected to a hostile work environment. However as discussed *supra*, Mims has failed to present sufficient evidence of a hostile work environment.  Accordingly, the School Board's motion is **GRANTED** on Mims' Title VII retaliation claim.

IV.  <u>**Conclusion**</u>

Accordingly, it is **ORDERED** that Mims' Section 1981 claims for hostile work environment, race discrimination, and retaliation are **DISMISSED** as a matter of law; and Mims' Section 1983 claim for equal protection retaliation is **DISMISSED** as a matter of law. Additionally as detailed *supra*, it is **ORDERED** that Defendants' Motion for Summary

Judgment (Docs. 27, 40) is **GRANTED** as to Mims' Title VII retaliation and discriminatory transfer claims; and **GRANTED** as to Mims' Section 1983 discriminatory transfer and hostile work environment claims.

A Final Judgment consistent with the terms of this Order shall be entered by separate document as required by Rule 58 of the Federal Rules of Civil Procedure.

**DONE** and **ORDERED** this the **12**[th] day of **August 2015.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**