IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **BARBARA TURNER, *et al.*,** | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 13-00643-KD-M** |
| | ) | |
| **MONROE COUNTY BOARD OF EDUCATION, *et al.*,** | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment as to Plaintiff Turner (Docs. 41-42), Turner's Response (Doc. 55) and Defendants' Reply (Doc. 57).

**I. Findings of Fact**[1]

Plaintiff Barbara Turner (Turner), a 65 year old African-American female, was originally employed by the Monroe County Board of Education (School Board) in 1985 as an English and general Math teacher at J.F. Shields High School (Shields), where she remained until 1989. Subsequently, Turner was employed from 1992 until 2011 at the J.F. Shields High School (Shields) as an Instructional Supervisor, Director of Guidance and Counseling, Homeless Children and Youth Coordinator, and as an English as a Second Language Coordinator. Turner also held the title/position of Assistant Principal/Counselor at Shields.

In 2011, Kathy Murphy (Murphy) became Superintendent, serving as the Chief Executive Officer and Secretary of the School Board, overseeing the day-to-day operations of the school

---

[1] At the summary judgment stage, the facts are taken in the light most favorable to the non-movant. Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

system and making recommendations to the School Board concerning various matters including personnel decisions. (Doc. 32-2 (Aff. Murphy)). According to Murphy, her goals and plans for the school system included continuously planning for school and district-wide improvement, and to have well-prepared, capable and dedicated faculty and staff throughout the district. (Id.) Two (2) schools were closed and many employees were shuffled to provide, according to Murphy, a more effective educational experience for students. (Docs. 39-11).

On March 30, 2012, Murphy held a meeting with directors, some principals, assistant principals and various central office personnel to discuss ideas for realigning personnel based on the needs of the school system and budgetary restraints. (Docs. 39-11). As part of her plan, Murphy stated she wished to improve the quality of education for the students assigned to the Monroe County C.P. Carmichael Alternative School (Alternative School) by providing meaningful instruction so when the students returned to the regular classroom setting they would be current on their class work. (Doc. 32-2 (Aff. Murphy)). This plan included transferring Turner – then Assistant Principal/Counselor at Shields -- to be the Assistant Principal/Counselor at the Alternative School. (Doc. 32-2 (Aff. Murphy)). This transfer was without a cut in either pay or position. (Id.)

On June 7, 2012, Murphy recommended Turner's transfer to the Alternative School to the School Board. (Doc. 35-8). After a board hearing, Turner was transferred. (Id.) Murphy delineated four (4) reasons to transfer Turner to the Alternative School: 1) having an instructional supervisor would ensure the work provided to the students was purposeful and aligned itself with the Alabama Course of Study and pacing guidelines; 2) Turner's history of working with homeless students, some of whom were occasionally assigned to the Alternative School, would be helpful as she had served those students in the past; 3) Turner had worked as

an instructional supervisor for counselors and so could serve as a resource to counsel at-risk students at the Alternative School; and 4) Turner's English degree gave her the ability to assist students struggling with English and grammar, help students pass the English/reading portion of the graduation exam and assist with English/Language Arts for younger students. (Doc. 32-2 (Aff. Murphy); Doc. 35-8; 39-11).

Turner initiated this litigation on December 30, 2013 purportedly alleging Title VII claims against the School Board, and alleging Section 1981/1983 race discrimination (discriminatory transfer), retaliation, and hostile work environment claims against Murphy and the individual board members.[2] (Doc. 18 at 1-3). However, Turner's Title VII claims were dismissed[3] and thus, the only claims remaining are her Section 1981/1983 claims against Murphy and the individual board members. (Id. at 3 at ¶6). As to those claims, Turner's Complaint alleges two (2) counts[4] for: 1) Fifth Cause of Action (Section 1981 claim) - "Equal Protection, 14th Amendment as enforced by Sections 1981;" and 2) Sixth Cause of Action (Section 1983 claim)[5] – "Equal Protection, 14th Amendment, as enforced by Sections 1981[.]" (Doc. 18 at 13-

---

[2] Suing Murphy in her individual capacity for Section 1981 and 1983 violations; and suing Tony Powell, Barbara Dean, Martha Jordan, Patricia M. Black and Richard R. Lett, members of the School Board, in their individual capacities for Section 1981 and 1983 violations. (Doc. 18 at 3).

[3] While Title VII was referenced in her Complaint, Turner alleges no Title VII counts therein, and moreover, this Court dismissed any Title VII claims she may have endeavored to raise. (Doc. 10 at 2-3 at note 1). Additionally, Turner alleges equitable and injunctive relief (Doc. 18 at 2), however she has raised no such claims on summary judgment and thus, such request for relief is deemed **MOOT**.

[4] As alleged in the Complaint, Turner only alleges Section 1981 and 1983 claims against Murphy and the individual board members but no such claims against the School Board (Doc. 18 at 3 at ¶6). Thus, there are no claims against the School Board at issue on summary judgment.

[5] While Turner does not title this as the "Sixth Cause of Action" a review of the complaint indicates that such was likely intended. (Doc. 18 at 13). Likewise, while Turner references Section 1981 in the heading, the body of this count discusses Section 1983. (Id. at 13-14).

15). The basis for Turner's claims consist of the following allegations:[6]

> …[in] 2011…Superintendent Murphy removed her secretary and took her for her own, even though Ms. Murphy already had a secretary. The Superintendent now has two secretaries and the plaintiff has none…Defendant Murphy is white. Plaintiff Turner avers that shortly after her appointment as Superintendent, Dr. Murphy summoned her to her office and began drilling her about, among other things, the Alabama course of study for Physical Education. The Superintendent began making restrictions on…Turner that was not applicable to her white counterparts. Of the…13 administrators in Monroe County Board of Education office, only three are blacks and the rest are all white. The student body for the school system is 90%-95% black yet there is an overwhelming majority of the teachers and administrators are white. Dr. Murphy has subjected…Turner to derogatory and disparaging comments about her political activity as a public servant beyond her employment…particularly her affiliation with the Alabama Democratic Conference, (the black wing of the Alabama Democratic Party), and her service as a member of the Monroeville City Council. The plaintiff submits that her complaint and the allegations set forth of herein arise to a level of racial harassment, hostile and racial discriminatory work environment. Plaintiff avers that Dr. Murphy has made negative comments about her affiliation with the Alabama Education Association, (AEA). The hostile work environment has caused…Turner's blood pressure to increase tremendously warranting medical care and treatment…on or about January 17, 2012, Dr. Murphy ordered… Turner to go on a radio program with her to talk about certain matters. Plaintiff avers that on the advice of her physician she was to avoid stressful situations. Plaintiff sought her doctor's advice on the matter and he instructed her not to go. Having declined, plaintiff avers that Dr. Murphy moved to have her doctor turn over her medical records and became upset when he refused to comply with her request. Plaintiff avers that the actions of Dr. Murphy have been continuous racial discrimination and hostility towards her. The Superintendent will speak to white teachers as opposed to the black teachers in making her inquiry as to what…Turner does in meetings and workshops, effectively undermining her authority in an effort to make her look incompetent…Turner submits that the actions of Defendant Murphy, has created a climate of fear and separatism among the plaintiff's staff as it is clear that she gives preference to, and greater weight to, the opinions of white teachers and administrators. The actions of the Superintendent on behalf of the Monroe County Board of Education, clearly constitutes race discrimination, making it difficult for…Turner to continue to work and effectively is an attempt to force her into resignation…Turner avers that June 7, 2012 was evidence of continued adverse employment action by Superintendent Murphy's action against the plaintiff when she reassigned her to Monroe County alternative school, namely C.P. Carmichael Alternative School, on recommendation to the defendants Monroe County Board of Education and its members who approved the same, rubber stamping the Superintendent's recommendation….

[6] While the Complaint suggests that Turner endeavors to "adopt and incorporate" all prior paragraphs and factual allegations (apparently including those of co-plaintiff Mims), she cannot assume Mims' specific paragraphs/allegations as her own because such "me too" evidence is not permissible in this case. Moreover, the practice of "adopting and incorporating by reference" is disfavored in this Court.

(Doc. 18 at 3-5, 13-14). Turner asserts that "Murphy made me feel like a slave and her tongue was the whip." (Doc. 55-1 at 5 (Aff. Turner at ¶31)). According to Turner, "[b]ased on the conversations Dr. Murphy has held [sic] with me, and the choice of words she used has led me to believe she is a racist. Her actions and dialogue with other black employees…also substantiates my belief as to how she feels toward African-Americans." (Id. at 6 (Aff. Turner at ¶36)).

## II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (Dec. 2010). Rule 56(c) provides as follows:

> ***(1) Supporting Factual Positions.*** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> ***(2) Objection That a Fact Is Not Supported by Admissible Evidence.*** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> ***(3) Materials Not Cited.*** The court need consider only the cited materials, but it may consider other materials in the record.
>
> ***(4) Affidavits or Declarations.*** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c) (Dec. 2010). The party seeking summary judgment bears the "initial

responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992) (internal citations and quotations omitted).

**III. Conclusions of Law**

At the outset, Turner has failed to provide specific citations to the evidence to support her claims, despite the Court's prior instructions. (Doc. 49). Instead, Turner cites evidence generally, without any specificity as to that upon which she relies (*e.g.*, "Murphy's Depo; Board Members deposition: Dean, p. ; Lett, p. Powell, p.[,]" "See her EEOC Exhibits, Affidavits and excerpts of Deposition testimony of how she was treated different…"). (Doc. 55 at 2, 10). In this sense, Turner wholly fails to discuss (and show support for) how she was discriminated against. Instead she simply points to a series of exhibits in general and then directs the Court to discover the evidence for her. A party may not, by the simple dumping of a mass amount of evidentiary material into the record, shift to the Court the burden of identifying evidence supporting its position. The same holds true for Defendants who, while submitting 101 exhibits

comprising approximately 1,270 pages (without delineation between Turner and Mims) (Docs. 28-39, 44), only cite to 10 exhibits for Turner. Accordingly, the Court's review is limited to those portions of the submitted materials to which the parties have expressly drawn the Court's attention with specific citation.[7] The Court has thus not considered those exhibits referenced generally (without any page or paragraph citation), as it is not the undersigned's task to use its resources to ferret out evidentiary support for the parties on summary judgment. [8]

**A. <u>Section 1981 claims</u>: Fifth Cause of Action - "Equal Protection, 14th Amendment as enforced by Section[] 1981"**

As alleged, the defendants are state actors (Murphy and the individual board members are government officials "acting under color of [state] law"). "Section 1981 does not provide a cause of action against state actors; instead, claims against state actors or [sic] allegations of § 1981 violations must be brought pursuant to § 1983." <u>Baker v. Birmingham Bd. of Ed.</u>, 531 F.3d 1336, 1337 (11th Cir. 2008) (citing <u>Butts v. County of Volusia</u>, 222 F.3d 891, 892-894 (11th Cir. 2000)). <u>See, e.g.</u>, <u>Cotton v. Polk Cty. Bd. of Cty. Com'rs</u>, 2015 WL 1020634, *1 (M.D. Fla. Mar. 9, 2015); <u>Betts v. Conecuh Cty. Bd. of Ed</u>., 2014 WL 7411670, *5-7 (S.D. Ala. Dec. 30, 2014); <u>Hamilton v. Montgomery Cty. Bd. of Ed</u>., 122 F.Supp.2d 1273, 1279 (M.D. Ala. 2000). As such, the Court merges Turner's Section 1981 count into her Section 1983 count, **DISMISSING** the "Fifth Federal Cause of Action" (Doc. 18 at 1-2, 13) against these defendants,

[7] As illustration, for Turner this means the entirety of her evidence considered on summary judgment consists of two (2) paragraphs from Turner's affidavit, and approximately 20 pages from the depositions of individual board members Tony Powell, Barbara Dean and Patricia M. Black, and Superintendent Kathy Murphy.

[8] "There is no burden upon the…court to distill every potential argument that could be made based upon the materials before it on summary judgment." <u>Resolution Trust Corp. v. Dunmar Corp.,</u> 43 F.3d 587, 599 (11th Cir. 1995). It is not the duty of the Court to scour the record to find specific references and places the parties *may* deem relevant. "Judges are not like pigs, hunting for truffles buried in briefs." <u>United States v. Dunkel</u>, 927 F.2d 955, 956 (7th Cir. 1991). <u>See</u> <u>also</u> <u>e.g.</u>, <u>Mathis v. Kerry</u>, 2014 WL 793996, *1 (M.D. Ga. Feb. 27, 2014) (that "judges have no duty to scour the file in search of evidence is an obvious corollary to the requirement that parties specifically identify the portions of the…file which support their assertions regarding whether genuine issues remain for trial[]").

as a matter of law. Jett v. Dallas Ind. Sch. Dist., 491 U.S. 701, 733 (1989) (Section 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor[]")); McMillan v. Fulton Cty., Ga., 352 Fed. Appx. 329, 330 at n. 1 (11th Cir. 2009) (there is no liability under section 1981 in cases involving state actors as such claims merge into the Section 1983 claims).

**B. Section 1983 claims: Sixth Cause of Action – "Equal Protection, 14th Amendment" as enforced by Section 1983**

Turner asserts Section 1983 claims for "Equal Protection, 14th Amendment" against Murphy and the individual board members in their individual capacities, for hostile work environment, retaliation, and race discrimination (discriminatory transfer). (Doc. 18 at 1-2, 14). While inartfully pled, it appears that Turner alleges that these defendants violated her equal protection rights because they engaged in a "custom and policy" of transferring African American employees to the Alternative School, but not Caucasian employees. (Id. at 14 at ¶31).

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

To establish a Section 1983 claim, Turner must show a violation of a right secured by the Constitution of the United States, and that the deprivation of that right was committed by a person acting under color of state law. Cummings v. DeKalb Cty,, 24 F.3d 1349 (11th Cir. 1994). Section 1983 does not provide substantive rights, but merely "a method for vindicating federal rights elsewhere conferred." Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979).

1. **Hostile Work Environment**[9]

Turner alleges Section 1983 hostile work environment against Murphy and the board members in their individual capacities, per the "Fourteenth Amendment" and "equal protection of the law." (Doc. 18 at 1-2, 14). Turner's claim is rooted in the following purported acts by Superintendent Murphy:

- She took away her secretary;
- She "summoned her to her office and began drilling her about…the Alabama course of study for Physical Education[;]" began making restrictions on Turner "not applicable to her white counterparts.[;]"
- She "subjected…Turner to derogatory and disparaging comments about her political activity as a public servant beyond her employment…particularly her affiliation with the Alabama Democratic Conference, (the black wing of the Alabama Democratic Party), and her service as a member of the Monroeville City Council[;]"
- She made negative comments about her AEA affiliation; asked for medical records when she refused to attend a radio show;
- She "speak[s] to white teachers as opposed to the black teachers in making her inquiry as to what…Turner does in meetings and workshops, effectively undermining her authority in an effort to make her look incompetent[;]"
- She "created a climate of fear and separatism among the plaintiff's staff as it is clear that she gives preference to, and greater weight to, the opinions of white teachers and administrators[;]" and
- She reassigned/transferred her to the Alternative School.

(Doc. 18 at 3-5). Also according to Turner, Murphy made her "feel like a slave," which led

---

[9] With regard to Turner's hostile work environment claim, this is not a class action and the Complaint does not allege "pattern and practice" for her allegations (despite Defendants briefing of this issue on summary judgment (Doc. 42 at 13-14)). EEOC v. Joe's Stonecrab, Inc., 220 F.3d 1263, 1286-1287 (11th Cir. 2000) (distinguishing pattern and practice claims from others, suggesting such claims may only be brought by the EEOC or a class of private plaintiffs).

Moreover, Turner cannot rely upon and/or base her hostile work environment claim on any evidence of the other co-plaintiff's experiences. See, e.g., Brown v. Berg Spiral Pipe Corp., 2011 WL 3610646, *14 (S.D. Ala. Aug. 17, 2011). Support for Turner's discrimination case can only be based on evidence regarding *her* specific experiences or that which she became aware of while employed. This is because "[t]o rely on the evidence, each [plaintiff] must show that he *was aware* of those incidents at the relevant time he alleges the hostile work environment." See, e.g., Melton v. National Dairy, LLC, 705 F.Supp.2d 1303, 1342 (M.D. Ala. 2010) (citing Edwards Wallace Comm. College, 49 F.3d 1517, 1522 (11th Cir. 1995)) (emphasis in original). See also e.g., Head v. Pitts Enterp., Inc., 2010 WL 2773376, *8 (M.D. Ala. Jul. 14, 2010); McKenzie v. Citation Corp., LLC, 2007 WL 1424555, *13 (S.D. Ala. May 11, 2007). Courts in the Eleventh Circuit may consider statements not directed at a plaintiff and even hearsay statements, *so long as the plaintiff was aware of the statements at the time he was employed.* See, e.g., Yeomans v. Forster and Howell, Inc., 2010 WL 3716394, *5-6 (M.D. Ala. Sept. 10, 2010).

Turner to believe Murphy is a racist. (Doc. 55-1 at 6 (Aff. Turner at ¶36)). Additionally, Turner alleges the members of the board approved/"rubber stamped" Murphy's transfer recommendation. (Id.) Turner alleges that this created a hostile work environment, increasing her blood pressure "tremendously warranting medical care and treatment."

Racial harassment is actionable where the conduct is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. Freeman v. City of Riverdale, 330 Fed. Appx. 863, 865 (11th Cir. 2009). To establish a prima facie case of hostile work environment and/or racial harassment, the plaintiff must prove that: 1) she belongs to a protected group; 2) she has been subject to unwelcome harassment; 3) the harassment was based on a protected characteristic of the employee (such as race); 4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and 5) the employer is responsible for such environment under a theory of vicarious or direct liability. See, e.g., Reeves v. DSI Sec. Servs., Inc., 395 Fed. Appx. 544, 545–546 (11th Cir. 2010); McCann v. Tillman, 526 F .3d 1370, 1378 (11th Cir. 2008); Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002); Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999). To be actionable as severe or pervasive, harassment "must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceive[s]...to be abusive." Miller, 277 F.3d at 1276 (internal citation and quotation marks omitted). In other words, the severe or pervasive element has an objective and subjective component. McCann, 526 F.3d at 1378. To determine objective severity, courts look at the totality of the circumstances and consider: 1) the frequency of the discriminatory conduct; 2) the severity of the conduct; 3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and 4) whether the conduct

unreasonably interferes with an employee's job performance. Reeves, 395 Fed. Appx. at 546. See also Faragher v. City of Boca Raton, 524 U.S. 775, 787–788 (1998); Allen v. Tyson Foods, 121 F.3d 642, 647 (11th Cir. 1997) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). "The conduct is considered cumulatively instead of in isolation." Reeves, 395 Fed. Appx. at 546.

As to the first element, the parties do not dispute that Turner belongs to a protected group – African American. As to the second element, given Turner's allegations and viewing the factors in the light most favorable to her on summary judgment, the Court will assume Turner has been subject to unwelcome harassment.

Regarding the third element, Turner must establish that the harassment by the defendants was based on a protected characteristic – her race. This she has failed to do. The only evidence in the record concerning this element consists of Turner's conclusory and unsupported statements, speculation and beliefs that Murphy was racist and based her decisions regarding Turner on race. Moreover, Turner summarily concludes that the individual board members, who made the decision to transfer Turner, somehow "rubber stamped" this behavior by voting to transfer Turner to the Alternative School. See, e.g., Satchel v. School Bd. of Hillsborough Cty., 251 Fed. Appx. 626, 630 (11th Cir. 2007) (concluding the plaintiff failed to satisfy the third element when "the behavior she observed and experienced did not consist of any racially derogatory statements or acts" and merely evinced a belief that a coworkers was racist and the school system was affected by institutional racism).[10]

Specifically, Turner has submitted no evidence of discriminatory comments, racial epithets, veiled racial remarks, or any actions based on race by Murphy and/or the individual

[10] An unsupported assertion does not create the requisite genuine issue of material fact to survive summary judgment. Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("This court has consistently held that conclusory allegations without specific supporting facts have no probative value.")

board members. At best, Turner paints a picture of a work scenario in which she and Murphy did not get along, and one in which Murphy had a sharp critical tongue, was demanding and had high expectations as well as perhaps did not like Turner's outside political activities. Turner testified that Murphy just "didn't like me," harassed her, was "snappy," screamed at her, "hated me," and was trying "to destroy" her. (Doc. 44-2 (Dep. Turner at 49, 61, 69, 92-95)). Turner, however, has provided no evidence that any such discord was based on race, or that her treatment by Murphy had any racial component. Additionally, the evidence suggests that Turner actually believed that the animosity with Murphy was due to personal and/or political reasons, not race. See, e.g., Doc. 35-8 at 4-5, 7. Moreover, Amy McCrory, Principal of Monroeville Elementary School, observed how Murphy and Turner interacted with each other, noting that they "did not get along," but adding that she never saw Murphy do anything to indicate that "any friction between the two was racial. The two just seemed to not like each other." (Doc. 29-1 at 3 (Aff. McCrory)).

Further, there is no evidence, of any sort, that any of the individual board members engaged in any racially motivated actions as to Turner. Indeed, Turner has not shown that the the individual board members' approval (described as a "rubber stamp") of her transfer was racially motivated or that race was a factor. And that act – voting to approve the transfer – is the sum total allegation of discrimination leveled against the individual board members. While Murphy may have been unkind to Turner and perhaps disliked her, and even assuming the individual board members "approved" the transfer that was *somehow* rooted in this dislike, there is no evidence of any racial component or discrimination in their decision to transfer Turner.

The same holds true to any claim by Turner that there existed a custom and policy of discrimination – there is no evidence of such before this Court, by any of the defendants. Only

Turner's unsupported conclusory allegation.

Thus, Turner has failed to establish that any of the alleged acts on the part of Murphy, and/or the individual board members, were based on race or even traceable to her race. Moore v. Jimmy Dean/Sara Lee Foods, Inc., 520 F.Supp.2d 1359, 1363 (N.D. Ala. 2007). "Without an evidentiary basis, finding harassment on the basis of…race is impossible since the Court has nothing to evaluate." Aaron v. Board of Regents of Univ. Sys. of Ga., 58 F.Supp.3d 1368, 1382 (M.D. Ga. 2014) (citing *Mendoza v. Borden, Inc*., 195 F.3d 1238 (11th Cir.1999); *see also Wheatfall v. Board of Regents University System of Georgia*, 9 F.Supp.3d 1342 (N.D.Ga.2014) (Noting that in reviewing a hostile work environment claim 'without specifics ... a hypothetical reasonable person has nothing to evaluate.'). The Record before the Court is wholly inadequate to establish a claim for hostile work environment[]").[11] In sum, when viewing the facts in the light most favorable to Turner, a reasonable jury could not find that the purportedly harassing conduct was based on race or that it was severe and pervasive. As Turner has failed to satisfy her prima facie case, and Defendants' motion on this claim is **GRANTED.**

**2. Race Discrimination: Discriminatory Transfer**

Turner alleges Section 1983 race discrimination (disparate treatment) against Murphy and the board members in their individual capacities, relying upon the "Fourteenth Amendment" and "equal protection of the law." (Doc. 18 at 1-2, 14). Turner's equal protection race discrimination claim is that Murphy and the individual defendants discriminatorily transferred her from the Shields to the Alternative School.

[11] See also e.g., Jones v. Mabus, 2013 WL 4662821, *5 (M.D. Ga. Aug. 29, 2013) ("While the record demonstrates ample evidence of impolite, rude, and insensitive behavior on the part of Jones, the evidence does not reflect that there were any racial…components to Jones's particular brand of "management." The facts reflect that Jones treated all employees in an intolerable manner, behavior that ultimately led to his discharge. Thus, aside from her unsupported assertion that she was discriminated against based on race…Plaintiff has failed to present evidence showing that Jones's conduct constituted harassment motivated by her race…").

Turner may support her claims with direct evidence, circumstantial evidence, or statistical proof. Rioux v. City of Atlanta, Ga. 520 F.3d 1269, 1274 (11th Cir. 2008).[12] There is no allegation or submission of direct evidence or statistical proof[13] by Turner. Thus, Turner's "proof of her claim of race discrimination is based on circumstantial evidence." (Doc. 55 at 10).

Where there is only circumstantial evidence, courts apply the framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See, e.g., Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000). Under McDonnell Douglas, the plaintiff has the initial burden of establishing a prima facie case of race discrimination. Id. To establish a prima facie case of discriminatory transfer, Turner must show she was: 1) a member of a protected class; 2) qualified for her current position; 3) subjected to a transfer constituting an adverse employment action; and 4) replaced by someone outside her protected class. Hinson v. Clinch Cnty., Ga. Bd. of Ed., 231 F.3d 821, 828 (11th Cir. 2000); Ezell v. Darr, 951 F.Supp.2d 1316, 1334 (M.D. Ga. 2013). An "adverse employment action" requires "a serious and material change in the terms, conditions, or privileges of employment." Webb–Edwards v. Orange Cnty. Sheriff's Office, 525

[12] Direct evidence of discrimination is "evidence which reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004). Specifically, direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption. Taylor v. Runyon, 175 F.3d 861, 867 (11th Cir. 1999); Jones v. Bessemer Carraway Med. Ctr., 151 F.3d 1321, 1323 n. 11 (11th Cir. 1998); Burrell v. Board of Trustees of Ga. Military College, 125 F.3d 1390, 1393 (11th Cir. 1997). This means "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [race]." Van Voorhis v. Hillsborough Cnty. Bd. of Cnty. Comm'rs, 512 F.3d 1296, 1300 (11th Cir. 2008). See also Ferrell v. Masland Carpets, Inc., 97 F. Supp.2d 1114, 1123 (S.D. Ala. 2000). Moreover, evidence that merely suggests a discriminatory motive is, by definition, circumstantial evidence. Burrell, 125 F.3d at 1393-1394. "[R]emarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." Standard 161 F.3d at 1330. "To be direct evidence, the remark must indicate that the employment decision in question was motivated by race." Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1227-1228 (11th Cir. 2002).

[13] Turner alleged in her Complaint: "[o]f the…13 administrators in Monroe County Board of Education office, only three are blacks and the rest are all white. The student body for the school system is 90%-95% black yet there is an overwhelming majority of the teachers and administrators are white." However, Turner does not allege such on summary judgment and has expressed that her claims are based "exclusively" on circumstantial evidence.

F.3d 1013, 1031 (11th Cir. 2008) (internal quotation marks omitted). The relevant inquiry is whether the employment action is "materially adverse as viewed by a reasonable person in the circumstances," regardless of the "employee's subjective view of the significant adversity." Id. A transfer can be adverse if it involves a serious and material "reduction in pay, prestige, or responsibility." Hinson, 231 F.3d at 829.

Further, in Sims v. MVM, Inc., 704 F.3d 1327, 1332-1333 (11th Cir. 2013), the Eleventh Circuit clarified that the McDonnell Douglas framework is not the *sine qua non* for a plaintiff to survive summary judgment. See Smith, 644 F.3d at 1328. "The plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." Id. A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a "convincing mosaic" of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker. Id. See generally Hamilton v. Southland Christian School, Inc., 680 F.3d 1316, 1320 (11th Cir. 2012).

As to the first element, there is no dispute Turner is a member of a protected class, African American. Second, the Court assumes on summary judgment that Turner is qualified for her position (as Defendants have not asserted otherwise). Nevertheless, even viewing the facts in the light most favorable to her, Turner has failed to show that the transfer constituted an adverse employment action and that she was replaced by someone outside her protected class.

Specifically, Turner was transferred from the position of Assistant Principal/Counselor at Shields to the position of Assistant Principal/Counselor at the Alternative School. (Docs. 35-6; 35-8; 39-11). However, only her work site changed. (Id.) Turner's pay remained the same. (Id.) Turner's position and title remained the same. (Id.) The length of Turner's contract also remained the same. (Id.) A purely lateral transfer is not an adverse employment action and thus,

cannot support a prima facie case of discrimination. See, e.g., Doe. v. Dekalb Cty. Sch. Dist., 145 F.3d 1441, 1449-1451 (11th Cir. 1998). See also e.g., Pegram v. Honeywell, Inc., 361 F.3d 272, 283-284 (5th Cir. 2004); Jones v. District of Columbia Dep't of Corr., 429 F.3d 276, 281 (D.C. Cir. 2005); Smith v. Alabama Dep't of Corr., 145 F.Supp.2d 1291, 1297-1298 (M.D. Ala. 2001). Otherwise, “every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit[;]” “not everything that makes an employee unhappy is an actionable adverse action.” Doe, 145 F.3d at 1449.

In reality, it seems that Turner simply just did not want to be transferred to the Alternative School, and preferred to stay at Shields. And at most, on summary judgment, Turner asserts new allegations (without evidence in support) that she was “effectively demoted” and was “deprived of her office as she had previously had” at Shields. (Doc. 55 at 3). However, Turner’s subjective preferences and speculative conclusions do not transform a purely lateral transfer into an adverse employment action. “[I]t seems significant that no panel of this [Eleventh] circuit has ever listed a plaintiff's particular subjective preference as a basis for its holding that a transfer was adverse.” Doe, 145 F.3d at 1551. Consequently, because an adverse employment action is an indispensable element of a discriminatory transfer claim, Turner’s failure to present sufficient evidence for a reasonable jury to find that this element is met is fatal to her claim. See, e.g., Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1432 (11th Cir. 1998) (“Although a plaintiff's burden…is light, summary judgment against the plaintiff is appropriate if he fails to satisfy any one of the elements of a prima facie case[]”).

Moreover, Turner has failed to even allege, much less establish with evidentiary support, that she was replaced by someone outside her protected class.

Further, there is no “convincing mosaic” of circumstantial evidence that would allow a

jury to infer intentional discrimination by the decisionmaker in these circumstances.

As Turner has failed to establish a prima facie case, the Court need not address Defendants' articulated legitimate, non-discriminatory reasons for the transfer, or the matters of pretext or qualified immunity. As such, Defendants' motion as to this claim is **GRANTED.**

**3. Retaliation**

Turner alleges Section 1983 retaliation against Murphy and the board members in their individual capacities, relying upon the "Fourteenth Amendment" and "equal protection of the law." (Doc. 18 at 1-2, 14). Section 1983 provides a cause of action for retaliation. Bennett v. Hendrix, 423 F.3d 1247 (11th Cir. 2005). *However*, a Section 1983 retaliation claim cannot be brought under the equal protection clause. Watkins v. Bowden, 105 F.3d 1344, 1354-1355 (11th Cir. 1997) ("[a] pure or generic retaliation claim...simply does not implicate the Equal Protection Clause[])." "The right to be free from retaliation is clearly established as a *first amendment* right and as a statutory right under Title VII; but no clearly established right exists under the *equal protection* clause to be free from retaliation." Ratliff v. DeKalb Cty., Ga., 62 F.3d 338, 340 (11th Cir. 1995). Turner's Complaint references the "Fourteenth Amendment" and "equal protection" multiple times, alleging Section 1983 retaliation. Thus, Turner's Section 1983 equal protection retaliation claim against these defendants is **DISMISSED,** as a matter of law. See, e.g., Betts v. Conecuh Cty. Bd. of Ed., 2014 WL 7411670, *7 (S.D. Ala. Dec. 30, 2014) (dismissing equal protection claims under Section 1983 on similar grounds); Owens v. Jackson Cty. Bd. of Ed., 561 Fed. Appx. 846, 848 (11th Cir. 2014) (gender based discrimination does not implicate the Equal Protection clause).[14]

[14] Even assuming that a cause of action was stated, Turner has again failed to point to any actionable retaliatory conduct by any defendant. Turner merely states that after she filed her EEOC action she was subject to

## IV. Conclusion

Accordingly, it is **ORDERED** that Turner's Section 1981 claims for hostile work environment, race discrimination, and retaliation are **DISMISSED** as a matter of law; Turner's Section 1983 equal protection retaliation claim is **DISMISSED** as a matter of law; and Defendants' Motion for Summary Judgment (Docs. 41-42) as to Turner's Section 1983 discriminatory transfer and hostile work environment claims is **GRANTED** as detailed *supra*.

A Final Judgment consistent with the terms of this Order shall be entered by separate document as required by Rule 58 of the Federal Rules of Civil Procedure.

**DONE** and **ORDERED** this the **12th** day of **August 2015.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

retaliatory conduct and then cites her affidavit at paragraphs #31 and #36. These paragraphs simply state that Murphy made her feel like a slave by her choice of words.